# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRI-VALLEY CORPORATION, et al.,<br><br>Debtors. | Chapter 7<br><br>Case No. 12-12291 (MFW)<br>(Jointly Administered)<br><br>**Hearing Date: TBD**<br>**Obj. Deadline: February 27, 2015 @ 4:00 p.m.** |
| In re:<br><br>TVC OPUS I DRILLING PROGRAM L.P.,<br><br>Debtors. | Chapter 7<br><br>Case No. 12-12294 (MFW) |
| CHARLES A. STANZIALE, as Chapter 7 Trustee of TRI-VALLEY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>F. LYNN BLYSTONE, et al.,<br><br>Defendants. | Case No. 12-12291 (MFW)<br><br>Adv. Proc. No. 13-51212 (MFW) |
| JEOFFREY L. BURTCH as Chapter 7 Trustee of TVC OPUS I DRILLING PROGRAM, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>F. LYNN BLYSTONE, et al.,<br><br>Defendants. | Case No. 12-12291 (MFW)<br><br>Adv. Proc. No. 13-51214 (MFW) |

ME1 19740307v.1

| | |
|---|---|
| CHARLES A. STANZIALE, as Chapter 7 Trustee of Tri-Valley Corporation, Tri-Valley Oil & Gas Co. and Select Resources Corp., Inc., <br><br>        Plaintiff, <br><br>  v. <br><br>G. THOMAS GAMBLE and G. THOMAS GAMBLE, as trustee of GEORGE T. GAMBLE 1991 TRUST, <br><br>        Defendants. | Case No. 12-12291 (MFW) <br><br> Adv. No. 13-51312 (MFW) |
| JEOFFREY L. BURTCH, in his capacity as Chapter 7 Trustee for the ESTATE OF TVC OPUS I DRILLING PROGRAM, L.P., <br><br>        Plaintiff, <br><br>  v. <br><br>G. THOMAS GAMBLE and G. THOMAS GAMBLE, as trustee of GEORGE T. GAMBLE 1991 TRUST, <br><br>        Defendants. | Case No. 12-12291 (MFW) <br><br> Adv. No. 13-51316 (MFW) |
| OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF TVC OPUS I DRILLING PROGRAM L.P. and OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRI-VALLEY CORPORATION, *et al.*, <br><br>        Plaintiffs, <br><br>  v. <br><br>G. THOMAS GAMBLE and G. THOMAS GAMBLE, as trustee of GEORGE T. GAMBLE 1991 TRUST, <br><br>        Defendants. | Case No. 12-12291 (MFW) <br><br> Adv. No. 12-50994 (MFW) |

| | |
|---|---|
| CHARLES A. STANZIALE, as Chapter 7 Trustee of Tri-Valley Corporation, Tri-Valley Oil & Gas Co. and Select Resources Corp., Inc.,<br><br>          Plaintiff,<br><br>   v.<br><br>F. LYNN BLYSTONE,<br><br>          Defendant. | Case No. 12-12291 (MFW)<br><br>Adv. No. 14-50625 (MFW) |
| CHARLES A. STANZIALE, as Chapter 7 Trustee of Tri-Valley Corporation, Tri-Valley Oil & Gas Co. and Select Resources Corp., Inc.,<br><br>          Plaintiff,<br><br>   v.<br><br>JAMES KROMER,<br><br>          Defendant. | Case No. 12-12291 (MFW)<br><br>Adv. No. 14-50623 (MFW) |
| CHARLES A. STANZIALE, as Chapter 7 Trustee of Tri-Valley Corporation, Tri-Valley Oil & Gas Co. and Select Resources Corp., Inc.,<br><br>          Plaintiff,<br><br>   v.<br><br>JAMES G. BUSH,<br><br>          Defendant. | Case No. 12-12291 (MFW)<br><br>Adv. No. 14-50624 (MFW) |
| CHARLES A. STANZIALE, as Chapter 7 Trustee of Tri-Valley Corporation, Tri-Valley Oil & Gas Co. and Select Resources Corp., Inc.,<br><br>          Plaintiff,<br><br>   v.<br>JOSEPH KANDLE,<br><br>          Defendant. | Case No. 12-12291 (MFW)<br><br>Adv. No. 14-50622 (MFW) |

**TRUSTEES' MOTION FOR APPROVAL OF (A) GLOBAL SETTLEMENT OF LITIGATION AND DISPUTES INVOLVING FORMER DIRECTORS AND OFFICERS OF TRI-VALLEY CORP. AND (B) AGREEMENT ON HOW TO ALLOCATE SETTLEMENT PROCEEDS AMONG THE TRUSTEES AND CLASS ACTION PLAINTIFFS PURSUANT TO FED. R. BANKR. P. 9019**

Charles A. Stanziale, Jr. (the "TVC Trustee"), in his capacity as the Chapter 7 Trustee of the estates of Tri-Valley Corporation, *et al.* (the "TVC Debtors"), by and through his counsel, McCarter & English LLP, and Jeoffrey L. Burtch (the "Opus Trustee"), in his capacity as the Chapter 7 Trustee of the estate of TVC Opus I Drilling Program, L.P. ("Opus" and collectively with the TVC Debtors, the "Debtors"), by and through his counsel, Cozen O'Connor, hereby move this Court for entry of an Order Approving (a) a global settlement of, *inter alia*, adversary proceedings, pending motions and other litigation and disputes ("Settlement Agreement"), and (b) an agreement among the Trustees and a group of class action plaintiffs on how to allocate the cash proceeds of the global settlement ("Allocation Agreement"), pursuant to Fed. R. Bankr. P. 9019 (the "Motion"), and in support thereof, state as follows:

**JURISDICTION, VENUE, PREDICATES FOR RELIEF**

1. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §1334(b). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicate for the relief requested herein is Bankruptcy Rule 9019.

**BACKGROUND**

4. On August 7, 2012 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

ME1 19740307v.1

5. On March 25, 2013, an Order was entered converting the Chapter 11 bankruptcy cases to cases under Chapter 7 of the Bankruptcy Code.

6. On March 26, 2013, the Office of the United States Trustee for the District of Delaware appointed Charles A. Stanziale, Jr. as Chapter 7 Trustee for the TVC Debtors and Jeoffrey L. Burtch as Chapter 7 Trustee for Opus.

7. In accordance with their duties under the Bankruptcy Code, the Trustees investigated the estates' potential causes of action against former directors and officers of TVC for breaches of fiduciary duty, equitable subordination, disgorgement of improperly received funds from the estate, and fraudulent and preferential transfers, and instituted a number of adversary actions.

8. Following multiple sessions with an experienced mediator, the Trustees, certain defendants, and their insurers have, subject to Bankruptcy Court approval, reached a comprehensive settlement of disputes. The parties to the Settlement Agreement are:

   a. The "Plaintiffs": the TVC Debtors' estates and the TVC Trustee; the Opus estate and the Opus Trustee; and Steven Siegal, James Rybicki, David Groblebe, individually and as General Partner of Grobco II, and Christian Wipf (collectively, the "Named California Plaintiffs"), all individually and on behalf of the Opus Shareholder Settlement Class as defined herein, and G. Robert Miller, individually and as a member of the Settlement Class (collectively, the "California Plaintiffs");

   b. The "Defendants": Paul Bateman, Greg Billinger, Milton J. Carlson, Maston Cunningham, John Durbin, Edward Gabriel, Dennis Lockhart, Henry Lowenstein, James Mayer, Loren Miller and Harold Noyes; F. Lynn Blystone; G. Thomas Gamble and George T. Gamble 1991 Trust (collectively, "Gamble"); James Kromer; James G. Bush; Joseph Kandle.

   c. The Directors and Officers Insurance Companies (collectively the "D&O Insurers"): National Union Fire Insurance Company of Pittsburgh, PA and AIG Claims, Inc. ("National Union"); Arch Insurance Company ("Arch"); Liberty Mutual Insurance Company ("Liberty").

See Settlement Agreement at ¶ 1.

9. The settlements described herein resolve, *inter alia*, disputes related to the Debtors' bankruptcy cases, a putative class action pending in the United States District Court for the Northern District of California, as well as the following adversary proceedings pending in this Court:

> *Stanziale, Jr. v. Blystone, et al.,* Adv. Pro. No. 13-51212-MFW (Bankr..Del. 2013)
>
> *Burtch v. Blystone et al.,* Adv. Pro. No. 13-51214-MFW (Bankr. Del. 2013)
>
> *Stanziale, Jr. v. Gamble, et al.,* Adv. Pro. No. 13-51312-MFW (Bankr. Del. 2013)
>
> *Burtch v. Gamble, et al.,* Adv. Pro. No. 13-51316-MFW (Bankr. Del. 2013)
>
> *Official Committee of Equity Security Holders of TVC Opus I Drilling Program L.P. et al. v. Gamble, et al.,* Adv. Pro. No. 12-50994-MFW (Bankr. Del. 2012).
>
> *Stanziale, Jr. v. Blystone*, Adv. Pro. No. 14-50625-MFW (Bankr. Del. 2014)
>
> *Stanziale, Jr. v. Kromer*, Adv. Pro. No. 14-50623 (Bankr. Del. 2014)
>
> *Stanziale, Jr. v. Bush*, Adv. Pro. No. 14-50624 (Bankr. Del. 2014)
>
> *Stanziale, Jr. v. Kandle*, Adv. Pro. No. 14-50622 (Bankr. Del. 2014).

See Settlement Agreement at ¶ 2.

10. In addition, the parties have settled the motion filed by Gamble to compel payment of attorneys' fees and expenses from the Debtors' estates in accordance with the Final DIP Order and the DIP Credit Agreement (D.I. No. 769) (collectively, the adversary proceedings listed above together with the Gamble motion, the "Litigation"). The settlement also resolves, *inter alia*, pending class action litigation in the U.S. District Court for the District of Northern California filed on behalf of Opus investors against former directors and officers of TVC, styled *Siegal, et al. v. Gamble, et al.,* No. 13-cv-03570-JSC (N.D. Cal. 2013) (the "California Action"). All of these disputes were the subject of an extensive mediation process that included the defendants' insurance carriers (the "D&O Insurers") that had issued D&O Liability Policies to

indemnify TVC's directors and officers. The mediation was conducted over several days by an accomplished mediator under the auspices of JAMS, the largest private alternative dispute resolution provider in the world.

11.     The Trustees also reached an agreement with the California Action plaintiffs regarding the allocation of the settlement proceeds and further cooperative efforts in the future ("Allocation Agreement").

12.     The Trustees now seek Bankruptcy Court approval for the Settlement Agreement and the Allocation Agreement (collectively, the "Settlements").

## SUMMARY OF SETTLEMENTS[1]

13.     The Settlement Agreement (a copy of which is attached hereto as **Exhibit A**) provides for, *inter alia*, the payment of $9,000,000 in cash (the "Settlement Fund") to the Trustees and the California Plaintiffs.[2] The Settlement Fund will consist of $8 million to be paid by the D&O Insurers and $1 million to be paid by Gamble. In addition to his cash contribution, Gamble will be waiving asserted secured and administrative expense claims against the Debtors' estates of more than $1.8 million. The Trustees and the California Plaintiffs will partially reimburse the Outside Directors for legal expenses not to exceed $61,200 from the Settlement Fund in connection with insurance coverage issues pertaining to the Litigation.

14.     The Settlement Agreement provides for mutual releases and the entry of orders by this Court against the Trustees, the debtors, and anyone claiming through them, and by the District Court in California against the Settlement Class, and anyone claiming through the class

---

[1] This summary is included solely for ease of reference but is in no way controlling over terms contained in the respective settlement agreements. In the event of any inconsistency, the terms of the respective settlement agreements shall control.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

members, from prosecuting, directly or indirectly, any of the Released Claims or any claims arising from the Released Claims. However, the failure of the Bankruptcy Court to enter the Bankruptcy Bar Order on the grounds that it lacks the power to do so are not grounds for termination of the Settlement. Specifically, Section 5 of the Settlement Agreement provides for the following releases upon satisfaction of the Conditions Precedent:

> a. Each of the Plaintiffs and Defendants does fully, finally and forever release each other, as well as all respective past and present parents, subsidiaries and affiliates, and their respective current and former directors, officers, general partners, managers, employees, attorneys, and agents, the D&O Insurers and all persons and entities insured under the policies issued by the D&O Insurers to Tri-Valley or Opus from all claims that were or could have been alleged in the Proceedings or which relate in any way to the subject matter of the Proceedings, except as provided herein and in Paragraphs 7 and 8 [of the Settlement Agreement] and subject to the terms of the Insurer Agreements (the "Released Claims"). By way of example and without limitation of the foregoing, the foregoing releases expressly include any (i) claims by Gamble for attorneys' fees and expenses against Tri-Valley and/or Opus, and (ii) any and all claims by any of the Trustees, the estates of Tri-Valley or Opus, or any other Plaintiff, whether direct or derivative, against Defendants, including but not limited to, any actions under Chapter 5 of title 11 of the United States Code. The foregoing releases will not apply to (i) any claims by and between Opus and Tri-Valley, all of which are expressly preserved, and (ii) any claims by the Plaintiffs against K&L Gates LLP, Behrooz Sarafraz, and persons other than Defendants who received commissions or other payments in connection with the sale of Tri-Valley stock or interests in Opus. Nothing contained in this paragraph is intended to prohibit or prevent the Plaintiffs from taking discovery from the Defendants in aide of their claims against other persons, but both Plaintiffs and Defendants will cooperate in good faith to minimize the expense and disruption caused by such discovery and Defendants reserve the right to seek reimbursement and/or indemnification for attorney's fees and costs from any Plaintiff serving discovery requests, subject to any objections or defenses by said Plaintiff.
>
> b. Each of the Defendants and their respective agents, representatives, attorneys, successors, heirs, and assigns (the "Defendant-Related Parties"), on the one hand, and Arch and Liberty and each of their respective present, former and future corporate parents, subsidiaries, and affiliates, and their licensees, assigns, principals, shareholders, representatives, insurers, reinsurers, agents, attorneys, employees, partners, officers, and directors, in their official and unofficial capacities, jointly and individually (the "Arch and Liberty Parties"), on the other hand, shall release and forever discharge one another from any and all actual or potential actions, causes of action, suits, proceedings, liabilities, demands, or

      claims for coverage, sums of money, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, judgments, compensation or other monetary or non-monetary relief whatsoever, in law or in equity, suspected or unsuspected, claimed or unclaimed, liquidated or unliquidated, matured or unmatured, fixed or contingent, known or unknown, previously existing, existing as of the date of this Agreement or hereafter arising, whether contractual, extra-contractual, in tort, or otherwise that the Defendant-Related Parties, on the one hand, and Arch and Liberty Parties, on the other hand, had, have, or may have in the future against one another with respect to (i) any of the Released Claims; (ii) the Proceedings; (iii) any of the allegations asserted in the Proceedings; (iv) any matter alleging, arising out of, based upon, or attributable to the facts alleged in the Proceedings or alleging any Wrongful Act (as defined in National Union Policy 02-206-15-24) which is the same as or related to any Wrongful Act alleged in the Proceedings; or (v) the D&O Insurers' investigation, evaluation, or handling of the Proceedings or the Released Claims, including but not limited to allegations of any "bad faith" or extra-contractual obligations, breach of any oral or written promise, or breach of any duty grounded in law or in contract relating thereto. Notwithstanding the foregoing and anything else herein to the contrary, the Arch and Liberty Parties and Defendant-Related Parties shall not be released from their obligations under this Agreement and any applicable Insurer Agreement. Nothing herein shall impact or impair the terms of the Insurer Agreements.

   c. The D&O Insurers release Plaintiffs from all claims arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement, or resolution of the Proceedings.

15. The Trustees will dismiss the Litigation upon approval of the Settlement by this Court and the District Court in California and receipt of the Settlement Funds.

16. In addition to entry of the bar orders, the Settlement Agreement is conditioned upon the approval of this Court, including dismissal with prejudice of the Adversary Proceedings; and approval by the *Siegal* Court, including certification of the Settlement Class for purposes of the settlement, satisfaction of certain Opt-Out Conditions, dismissal of all claims against Defendants in the *Siegal* Action, and final approval by the *Siegal* Court. The Opt-Out Conditions permit the Defendants to terminate the Settlement if a specified number of members of the Settlement Class in the *Siegal* Action request exclusion from the Settlement Class, and two or more Defendants elect to terminate the Settlement.

ME1 19740307v.1

17. The Trustees and the Plaintiffs in the California Action entered into a separate Allocation Agreement that would result in the following distribution of the cash proceeds among the three parties: $2.25 million to the TVC estates; $2.25 million to the Opus estate; and $4.5 million to the Plaintiffs in the California Action. A copy of the Allocation Agreement is attached hereto as **Exhibit B**. The Allocation Agreement provides that the Trustees will assign to the California Plaintiffs any claims the estates hold against the Debtors' former attorneys and agree to waive the Debtors' attorney-client privilege with those attorneys; the Trustees and the California Plaintiffs also agreed to jointly prosecute their claims against Behrooz Sarafraz and certain other alleged "finders" who received illegal commissions from TVC or Opus in connection with the sale of TVC stock or Opus units, sharing the expense and effort of the litigation and dividing the proceeds of any recovery as follows: 50% to the California Plaintiffs, 25% to the Opus estate and 25% to the TVC Debtors' estates. The Allocation Agreement also applies the same percentages to the payment to the Outside Directors in partial reimbursement of their legal fees. Finally, the Opus Trustee agreed to waive any deficiency claims Opus may have against the California Plaintiffs who are alleged to be general partners of Opus, and the California Plaintiffs agreed that any claim submitted in the Bankruptcy Cases by any Class Member shall be classified as equity rather than debt.

## RELIEF REQUESTED

18. By this Motion, the Trustees seek entry of an order, substantially in the form of the Proposed Form of Order, approving the Settlement Agreement and the Allocation Agreement.

19. Bankruptcy Rule 9019 governs the approval of compromises and settlements, and provides as follows:

ME1 19740307v.1

> On motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019.

20. The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also Matter of Penn Central Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) ("In administrating reorganization proceedings in an economical and practical matter it will often be wise to arrange the settlement of claims . . .") (internal citation marks and quotation marks omitted).

21. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] [it]self of all facts necessary [to form] an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated, [and] estimate . . . the complexity, expense and likely duration of such litigation . . . all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Matter of Penn Central Transp. Co.*, 596 F.2d at 1114; *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (describing the "ultimate inquiry to be whether the compromise is fair, reasonable, and in interest of the estate") (internal citations and quotation marks omitted).

22. The United States Court of Appeals for the Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Myers v. Martin* (*In re Martin*), 91

F.3d 389, 393 (3d Cir. 1996) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)); *accord In re Nutraquest, Inc.,* 434 F.3d 639, 644 (3d Cir. 2006).

24. Furthermore, the decision to approve a compromise is "within the [sound] discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. at 296. In making its decisions, the bankruptcy court should not substitute its judgment for that of the debtor. The court is not to decide the numerous questions of law or fact raised by the litigation, but rather should canvas the issues to determine "whether the settlement fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983) (internal citations and quotations omitted); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the range of litigation possibilities") (internal quotation marks and citations omitted).

24. In passing upon the reasonableness of a proposed compromise, the Court "may give weight to the opinions of the Trustee, the parties and their counsel in determining the reasonableness of the proposed settlement." *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr. N.D. Ohio), *aff'd*, 87 B.R. 412 (N.D. Ohio 1987); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other") (internal citations omitted).

25. The Trustees believe that the Settlement Agreement and related Allocation Agreement[3] rise well above the "lowest point in the range of reasonableness." Additionally, as discussed more fully below, each of the applicable *Martin* factors set forth above weighs in favor of approving the Settlement.[4] The Court should therefore approve the Settlement pursuant to Bankruptcy Rule 9019 and applicable law.

**Probability of Success in Litigation**

26. While the Trustees believe that the Litigation asserted viable claims (which the Defendants denied and disputed), they recognize that any recovery in the Litigation would be uncertain. The Litigation resolved by the Settlement Agreement involves complicated factual and legal issues regarding (i) the interpretation of previous Orders of this Court; (ii) rights that may be afforded under a debtor-in-possession financing arrangement; (iii) whether and at what point the Debtors became insolvent; (iv) whether under Delaware law the directors and officers breached their duty of care and/or loyalty; (v) whether the claims are covered under each of the three layers of insurance (some issues are common and some are unique to a particular policy); and (vi) whether parties have standing and the Court has jurisdiction to address the claims brought before the Court. The Litigation also would have involved addressing and resolving complicated state and federal securities law issues, Delaware corporate governance issues, and the procedural issues of proceeding with six separate law suits in two courts. The issues, no matter how they may be decided by this Court or the class action court in California, are such that the losing party is certain to pursue appellate review. While there are a myriad of issues that

---

[3] The Settlement Agreement is not conditioned on the Court's approval of the Allocation Agreement, although the Trustees believe that they should be considered together.

[4] The Trustees believe that the Settlement does not present any significant issues regarding the second *Martin* factor (consisting of likely difficulties in collection). Although, as noted in paragraph 28, potentially wasting insurance policies could lead to a difficulty in collection. Nonetheless, this factor likely weighs neither in favor nor against approval of the Settlement Agreement.

are disputed, there are certain issues that if any one of them is decided against the Trustees, it could severely impair the recovery for the estates.

27. The Allocation Agreement resolves the dispute over how to allocate the recovery among the three plaintiffs with both overlapping and unique legal and equitable claims against the various defendants. Litigation over these issues would serve only to delay and erode ultimate recovery to the stakeholders in these cases.

**Complexity of Litigation Involved, and Expense, Inconvenience, and Delay Necessarily Attending the Litigation**

28. As set forth above, the claims involve complex legal and factual issues regarding the alleged breaches of fiduciary duties and avoidance action under Chapter 5 of the Bankruptcy Code. Given the extensive factual record and myriad of legal issues, the Litigation would be protracted and very expensive for the Debtors' estates. Furthermore, since most of the settling Defendants are insureds under the D&O policies, protracted litigation could exhaust the D&O policies through payment of the defense costs of the various legal teams assisting the multiple Defendants. Even if the policies were not exhausted, the D&O Insurers raised substantial policy defenses to the Debtors' claims. The Settlement avoids these obstacles in favor of a prompt and efficient resolution without the need to expend further estate resources.

29. Bankruptcy courts have authority to enter settlement bar orders. Bar orders are used to encourage partial settlements of litigation involving multiple defendants by barring contribution claim litigation against settling defendants by non-settling defendants. *In re Tribune Co.,* 464 B.R. 126 (D. Del. Bankr. 2011), *reh. den.*, 464 B.R. 208 (D. Del. Bankr. 2011). *See also In re Washington Mutual, Inc.,* 2012 WL 1563880 (D. Del. Bankr. Feb. 24, 2012) (Walrath, J.) (Order confirming plan includes bar order). *But see, In re Devon Capital Management, Inc.*, 261 B.R. 619 (W.D. Pa. Bankr. 2001) (Court refuses to approve bar order not

limited to claims for contribution or indemnification). Delaware has adopted the Uniform Contribution Among Tortfeasors Law, 10 Del. C. § 6301 *et seq.*, which provides for a reduction, to the extent of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors, thus providing contribution- protections to persons affected by the bar order.

### Paramount Interest of Creditors

30. Entry into the Settlements also serves the paramount interest of creditors of the Debtors' estates. Resolution of the claims through the Settlements represents a successful outcome for the Debtors' creditors by obviating the need for potentially protracted litigation and the expenses necessarily attendant to such litigation. The fourth *Martin* factor is therefore satisfied and weighs heavily in favor of the Court approving the Settlements.

31. With respect to the Allocation Agreement, the Trustees have assessed the respective merits of the claims asserted by each claimant, the non-cash consideration being provided (the waiver by Gamble of over $1.8 million in asserted secured and administrative expense claims), and the parties' respective contributions throughout the mediation process to reach an acceptable compromise. Since the California Plaintiffs and the Trustees each brought suit against Sarafraz, it made sense for them to reach an agreement to cooperate in the prosecution of those claims and any future claims against alleged "finders" who received illegal commissions for the sale of TVC stock and/or Opus partnership interests. Finally, the Allocation Agreement provides for cooperation between the California Plaintiffs and the Trustees in dealing with the claims against former counsel to the Debtors, with any recovery inuring to the California Plaintiffs and any expenses being borne by them.

32. Based on the foregoing, the Trustees submit that approval of the Settlement Agreement and the related Allocation Agreement is in the best interests of the Debtors' estates

and their creditors because it eliminates the risk of no recovery, the possibility of any protracted litigation with the Settling Parties, eases the administrative burden on these estates, and provides for a meaningful recovery in the amount of $2.25 million for each of the TVC Debtors and Opus and their respective creditors. The Settlement therefore represents a compromise between and among the parties that is fair and equitable and in the best interests of the Debtors' estates and their creditors.

## NOTICE

33. The Trustees have served notice of this Motion on the United States Trustee, the settling defendants, and parties who are required to receive notice under Bankruptcy Rule 2002.

34. No prior request for the relief sought herein has been made to any court.

## CONCLUSION

WHEREFORE, the Trustees respectfully request that this Court enter the attached Proposed Form of Order granting the Motion approving the Settlement Agreement and the Allocation Agreement, and granting such other and further relief as the Court deems just and equitable.

**[Intentionally Blank]**

Dated: January 28, 2015
      Wilmington, Delaware

**McCARTER & ENGLISH, LLP**

By: */s/ Kate Roggio Buck*
William F. Taylor, Jr. (DE #2936)
Kate R. Buck (DE #5140)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone 302.984.6300
Facsimile 302.984.6399
kbuck@mccarter.com

 - *and* -

Charles A. Stanziale, Jr., Esq.
Clement J. Farley, Esq.
Jeffrey T. Testa, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444

*Attorneys for Charles A. Stanziale, Jr., Chapter 7 Trustee of the estates of Tri-Valley Corporation, et al.*

- *and* -

COZEN O'CONNOR

By: */s/ Mark E. Felger*
Mark E. Felger (DE #3919)
Barry M. Klayman (DE#3676)
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
Fax: (302) 295-2013
Email: mfelger@cozen.com
       bklayman@cozen.com

*Attorneys for Jeoffrey L. Burtch, Chapter 7 Trustee for the estate of TVC Opus I Drilling Program, L.P*

ME1 19740307v.1