## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | :  Chapter 7 |
| | : |
| Tri-Valley Corporation, *et al.*,[1] | : |
| | :  Case No. 12-12291 (MFW) |
| Debtors. | : |
| | :  **Objection Deadline: TBD** |
| | :  **Hearing Date: TBD** |

## MOTION OF CHAPTER 7 TRUSTEE TO SELL, WAIVE, RELEASE ABANDON AND OTHERWISE QUITCLAIM ALL EASEMENTS, LEASES, LIENS, CLAIMS AND ANY TYPE OF ENUMBRANCES OR INTERESTS ON REAL PROPERTY

Charles A. Stanziale, Jr., as Chapter 7 Trustee ("Trustee") for the debtors/grantors, Tri-Valley Corporation ("Tri-Valley"), Tri-Valley Oil and Gas, Co. ("TVOG"), and Select Resources Corporation, Inc. ("Select" and collectively with Tri-Valley and TVOG, the "Debtors"), hereby moves (the "Motion") for entry of an order authorizing the Trustee, pursuant to 105(a) and 363(b) of the United States Code, 11 U.S.C. §§ 101 et seq. ("Bankruptcy Code"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware ("Local Rules"), to sell, waive, release, abandon and otherwise quitclaim all easements, leases, liens, claims, and any type of encumbrances whatsoever on certain real property described more fully below to DCT Industrial Operating LLC or its designee ("DCT"). In support of this Motion, the Trustee states as follows:

### Background

1.      Tri-Valley is the parent corporation of TVOG and Select.

---

[1] The Debtors in these cases are: Tri-Valley Corporation, Tri-Valley Oil & Gas, Co., and Select Resources Corporation, Inc.

2.      On August 7, 2012 (the "Petition Date"), Tri-Valley, TVOG and Select all filed voluntary petitions pursuant to chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code").

3.      Prior to the Petition Date, Tri-Valley was a crude oil and natural gas exploration, development, and production company engaged in the business of locating and developing hydrocarbon resources in California.  It conducted its business primarily through TVOG and Select.  TVOG operated the Debtors' oil and natural gas business in California.  Select operated the Debtors' mineral business in Alaska.

4.      In the years prior to the Petition Date, TVOG explored potential oil and natural gas sources throughout California.  In connection with its business, TVOG entered into leases with landowners, drilled exploratory wells and obtained easements for potential pipelines.

5.      In particular, TVOG acquired certain rights and easements with respect to a particular piece of real property commonly known as 8450 Arbor Avenue, Tracy, California (the "Premises").  The Premises are currently owned by Gregg Christensen and Robert Christensen ("Owners").  A full legal description of the Premises is attached hereto as **Exhibit 1**.

6.      Throughout the years, TVOG appears to previously have had certain interests ("Interests") in the Premises including, but not limited to, the following leases, easements, liens, rights and interests with respect to the Premises:

      a.   Oil Gas and Mineral Lease dated February 7, 1997 (the "1997 Lease"), a recorded memorandum of which is attached as **Exhibit A**.

      b.   A drill site reserved on a quitclaim deed between TVOG and Gloria Bacchetti (the "Former Owner") dated on or about June 21, 1995 (the "1995 Deed"), attached as **Exhibit B.**

ME1 19803471v.1

      c.   An easement grant listed on an Easement Grant Deed between TVOG and the Former Owner dated April 24, 2001 ("Easement Grant Deed"), attached as **Exhibit C.**

7.     On March 25, 2013, the Debtors' chapter 11 bankruptcy cases were converted to cases under chapter 7 of the Bankruptcy Code. On March 26, 2013, the Trustee was appointed the Trustee of the Debtors' estates and has been charged with liquidating the Debtors' estates for the benefit of their creditors.

8.     In examining the affairs of the Debtors, the Trustee has determined that TVOG has no operations on the Premises. It has not drilled, and is not using the easements for any operations. The 1997 Lease, and any other rights that Debtors had have either expired or have been deemed rejected by operation Section 365(d)(4) of the Bankruptcy Code. Accordingly, in the exercise of the Trustee's business judgment, the Trustee has determined that the Trustee's Interests, if any, in the Premises, are essentially valueless.

### Relief Requested

9.     By this Motion, the Trustee, as grantor, proposes to sell, pursuant to Section 363(b), and waive, release, abandon and otherwise quitclaim all Interests in the Premises, to, and in favor of, DCT who is in negotiations to purchase the Premises from the Owners.

10.    To that end, the Trustee and DCT negotiated in good faith, and at arms-length, a private purchase by DCT of all Interests of the Trustee in the Premises and the waiver, release, abandonment and/or quitclaim of all of the Trustee's Interests in the Premises (the "Sale Agreement").

11.    The proposed consideration is $2,500.

12.    The material terms of the Sale Agreement, a copy of which is attached hereto as

**Exhibit D**[2] are as follows:

A. Assets.

   (i)     Trustee sells, waives, releases, abandons and otherwise quitclaims, in favor of DCT, all of Debtors' Interests in the Premises.

B. Purchase Price. The purchase price ("Purchase Price") for the Assets shall be an aggregate sum of two thousand five hundred dollars ($2,500), which shall be paid as follows:

   (i)     Within ten (10) business days following entry of a final, non-appealable order of the Bankruptcy Court approving the Sale Agreement, (a) the entire $2,500 shall be paid to the Trustee, and (b) the Trustee shall execute and deliver to DCT or DCT's counsel, the documents attached hereto as Exhibits E, F, and G.

C. Warranty.   To the best of the Trustee's knowledge, the Trustee is representing and warranting solely that, to the extent the estate held any of the Interests related to the Premises after his appointment as Trustee, he has not previously sold transferred or released any such Interests.

D. Free and Clear.   The transaction herein shall be free and clear of all liens claims and encumbrances to the extent permitted by 363(f). DCT shall also be entitled to 363(m) findings of good faith, and the transaction shall not be subject to avoidance under 363(n).

E. Contingencies.   The Sale Agreement shall be of no force or effect (i) unless (a) it is approved by the Bankruptcy Court, and (b) no timely appeals are filed, or, if filed, are finally decided in favor of the approval of the Agreement.

F. Bankruptcy Court Jurisdiction.   The Trustee and DCT agree that this Agreement and all obligations of the Trustee and DCT with respect hereto are subject to the approval of the Bankruptcy Court and the issuance of a Final Order approving this Agreement. This Agreement and the legal relations between the Trustee and DCT arising hereunder shall be governed by and interpreted in accordance with the laws of the State of Delaware; all disputes shall be presented exclusively to the Bankruptcy Court.

G. Miscellaneous.   This Agreement constitues the full and entire

---

[2]     This is a summary of the Sale Agreement only.  If there is any difference between this summary and the actual terms of the Sale Agreement, the Sale Agreement shall control.

ME1 19803471v.1

understanding and agreement between the Trustee and DCT regarding the transactions contemplated hereby, and supersedes all prior negotiations, agreements, arrangements, representations and understandings relating to the subject matter hereof.  There are no other representations or agreements of the Trustee and DCT other than contained herein.  If any term, provision, covenant, or restriction of this Agreement is held by the final, non-appealable order of a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the terms, provisions, covenants and restrictions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.  This Agreement may be amended, modified, or superseded only by written instrument executed by the Trustee and DCT.

H. <u>Final Order</u>.  The term "Final Order" as used herein, shall mean the date upon which an order of the Bankruptcy Court becomes final and non-appealable.

13.     The Trustee does not intend to conduct an auction for the Assets.  *See* Local Rule 6004-1(b)(iv)(D).   However, the Trustee has given notice of the instant Motion as required by Rules 6004(a) and 6004(b), including giving notice to the Owners of the Premises, and are providing such parties an opportunity to object to the relief requested.

14.     Pursuant to section 363(b)(1) of the Bankruptcy Code, the Trustee may use, sell or lease, other than in the ordinary course of business, property of the estate. Although section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan, courts in this Circuit and others, in applying this section, have required that the decision to sell assets outside the ordinary course of business be based upon the debtor's sound business judgment and a finding of "good faith." *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) (requiring a finding of "good faith" to approve a sale under section 363(b)); *DaiIchi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property under [section 363(b)], courts require the debtor to show that a sound business

5

purpose justifies such actions."); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (examining the history of the standard required for a pre-confirmation sale of assets under section 363(b) and opining that the Third Circuit (i) has implicitly abandoned the "emergency" test under earlier precedent and (ii) has adopted the "sound business judgment" test as utilized by other courts).

15.    The Trustee submits that more than ample business justification exists to sell the Assets to DCT pursuant to the Sale Agreement, because (i) there is a limited or no market for the Assets, (ii) the universe of parties with any interest in the Assets will receive notice of this Motion and the opportunity to object or bid for the Assets if desired, and (iii) the payment of the Purchase Price is a necessary adjunct to the consideration being paid to the Trustee as an inducement for sale and waiver of the Interests.  The relief sought herein is not only reasonable, but necessary, to maximize the value of the Debtors' estates for the benefit of stakeholders.  It is unlikely that any auction or further marketing of the Assets regarding the discrete Premises would result in a higher price.  Indeed, in the nearly 20 plus months since the Trustee was appointed, only DCT has approached the Trustee about purchasing them.  No one else, including the Owners, has offered any consideration to the Trustee to buy, waive, release, abandon and otherwise quitclaim the Interests.  Indeed, the Trustee believes that only the Owners or a party interested in purchasing the Premises would have any interest in obtaining and paying a nominal amount for the Trustee's waiver of such interests. The Trustee negotiated with DCT at arm's length to ensure that the proposed sale represents a fair price for what are otherwise, in the Trustee's exercise of his sound business judgment, valueless assets or assets without a market. Accordingly, the Trustee submits that the price is fair and reasonable, and that the sale represents the sound exercise of the Trustee's fiduciary duties.

16.     Moreover, the Trustee submits that no auction is necessary.  A Trustee has broad discretion in determining the manner in which its assets are sold. *See In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("The manner of the sale is within the discretion of the Trustee. . . ."). Rule 6004 of the Bankruptcy Rules sets forth the procedural parameters for asset sales outside of the ordinary course of business and provides that such sales may be by either public or private sales. Fed. R. Bankr. P. 6004(f)(1).  Accordingly, a Trustee may sell assets of the estate outside of the ordinary course of business without conducting a public auction thereof, or, as the case may be, soliciting a bid higher or better than that contained in a privately negotiated purchase agreement. *See In re Woodscape Ltd. P'ship*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) ("There is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

17.     A Trustee is obligated to maximize the return to its estate resulting from an asset sale, whether public or private.  *See In re Bakalis*, 220 B.R. at 532 ("When a debtor or trustee conducts a sale under § 363(b), it has an obligation to maximize revenues for the estate."); *In re Nepsco, Inc.*, 36 B.R. 25, 26 (D. Me. 1983) ("Clearly, the thrust of the statutory scheme is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, i.e., the creditors of the estate.").  Accordingly, if a debtor in possession concludes that a particular private purchase offer is the "most advantageous of the estate," a court should defer to the debtor in possession's business judgment.  *Bakalis*, 220 B.R. at 532.

18.     The Trustee submits that the proposed Sale is in the best interests of the Debtors' estate inasmuch as it will provide value in exchange for assets that, under the circumstances, would otherwise be impossible for the Trustee to liquidate.  In addition, as a practical matter, the Sale represents an efficient means for the disposition of the Assets.  The Trustee believes that

7

conducting an auction on notice during the pendency of this chapter 7 case for this type of discrete asset on a discrete parcel of real property, particularly in light of cash constraints, would not only be futile, but would be costly and impractical. A public auction is unnecessary because the DCT's offer will add value to the Debtor's estate, and the Trustee and his advisors have concluded, in their professional opinion after consideration of the offer received and the lack of other markets for the assets, that there is a high degree of certainty that the proposed Sale to DCT will provide the highest and best value for the Assets.

19.     The proposed sale to DCT is also proposed in good faith under 363(m) and is not the product of collusion under 363(n). The Trustee submits that the Sale Agreement has resulted from an arm's-length, actively negotiated transaction, in which the Purchaser was represented by counsel and at all times acted in good faith under the standards set forth in *Abbotts Dairies*. Accordingly, the Trustee requests that this Court make a factual determination that DCT will purchase the Assets under the Sale Agreement in "good faith," as defined in section 363(m) of the Bankruptcy Code and under Third Circuit precedent in *Abbotts Dairies*. Moreover, the sale was not the product of collusion and DCT should be protected from any ability of the Trustee to avoid the sale, and the Trustee hereby waives any rights it may have to avoid the sale under 363(n). DCT is not an insider of any of the Debtors, and both the Trustee and DCT have been represented by separate independent counsel regarding the transactions contemplated by this Motion.

20.     The sale should also be free and clear of liens, claims, encumbrances and interests. In accordance with section 363(f) of the Bankruptcy Code, a Trustee may sell property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

8

    (i)          applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

    (ii)         the lienholder or claimholder consents;

    (iii)        such interest is a lien and the price at which such property is to be sold isgreater than the aggregate value of all liens on such property;

    (iv)        such interest is in bona fide dispute; or

    (v)         such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21.    Satisfaction of any of the requirements enumerated therein will suffice to warrant the Trustee's sale of the Assets free and clear of liens, claims, encumbrances and interests. *See, e.g., Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) is written in the disjunctive; therefore, a court may approve a sale "free and clear," provided that at least one of the subsections is met).

22.    To the extent that any lien, claim, encumbrance or interest exists, it would fall into at least one of the five categories enumerated in section 363(f). The Trustee submits that any such lien, claim, encumbrance or interest will be protected adequately by attachment to the net proceeds of the sale with the same force, effect and priority that such lien, claim, encumbrance or interest has on the Assets. In addition, the Trustee believes that any entity with an interest in the Assets could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. Accordingly, the Trustee respectfully submits that the sale of the Assets free and clear of liens, claims, encumbrances and interests satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code and should be approved.

9

23.    Finally, stay of the Order approving this Motion should be waived.  Pursuant to Bankruptcy Rule 6004(g), an order authorizing a sale of property is stayed for fourteen days after the entry of the order unless the Court orders otherwise.  The Trustee requests that the Court order that such stay not apply with respect to the proposed sale to DCT.  Relief from such a stay is an implicit provision of the Sale Agreement, and is necessary to prevent the Trustee from being forced to expend additional estate funds that would otherwise be necessary to monetize the Assets.

24.    Accordingly, for all the foregoing reasons, the Trustee believes that the proposed sale to DCT, and the Trustee's waiver, release, abandonment and quitclaim of such Interests in favor of DCT constitutes the highest and best value for the Debtors' estates arising from the Assets and the Premises.

25.    It is contemplated by the Trustee and DCT that within ten (10) business days of entry of a Final Order by this Court, (a) the Trustee shall receive payment of the $2500 payment, and (b) that the Trustee shall execute and deliver to DCT or its counsel any and all documents presented by and deemed necessary by DCT, in its sole discretion, to give effect to the waiver, release, abandonment and quitclaim of all the Trustee's and Debtors' interests in the Premises, including, but not limited to, any documents needing to be filed in the public land records in California.  The three (3) documents currently anticipated to be required for filing are attached hereto as **Exhibits E, F** and **G.**

26.    Notice of this Motion has been provided to: (a) all parties that have previously filed a notice of appearance in the Chapter 11 or Chapter 7 Case pursuant to Bankruptcy Rule 2002, (b) counsel for the Owners, and (c) all others required to be given notice under Rule

ME1 19803471v.1

6004(a).  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is necessary.

WHEREFORE, the Trustee respectfully requests that the Court enter an order in the form attached hereto as **Exhibit H** authorizing and directing the Trustee, as grantor, to sell the Assets and waive, release, abandon and quitclaim all Interests in the Premises to DCT.

Dated: February 9, 2015
      Wilmington, Delaware

**McCARTER & ENGLISH, LLP**

By: */s/ William F. Taylor, Jr.*
William F. Taylor, Jr. (DE #2936)
Kate R. Buck (DE #5140)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone (302) 984-6300
Facsimile (302) 984-6399
wtaylor@mccarter.com
kbuck@mccarter.com

*- and -*

Charles A. Stanziale, Jr., Esq.
Jeffrey T. Testa, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444

*Attorneys for the Chapter 7 Trustee*